# IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF GEORGIA
## VALDOSTA DIVISION

| | |
|---|---|
| BRIAN EDWARDS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. 7:20-CV-00003-WLS |
| | ) |
| TIFT REGIONAL HEALTH SYSTEM, INC., | ) |
| | ) |
| Defendant. | ) |

## DEFENDANTS' BRIEF IN SUPPORT OF
## MOTION FOR SUMMARY JUDGMENT

Dated this 18th day of June, 2021.

CONSTANGY, BROOKS, SMITH & PROPHETE, LLP

/s/ Alyssa K. Peters
ALYSSA K. PETERS
Georgia Bar No. 455211

577 Mulberry Street, Suite 710
P.O. Box 1975
Macon, GA 31202-1975
(478) 750-8600
(478) 750-8686 (facsimile)
apeters@constangy.com

1

**DError! Bookmark not defined.**

**STATEMENT OF THE CASE**

Plaintiff Brian Edwards ("Plaintiff"), African-American, was employed by Tift Regional Health System, Inc. ("Tift") as a Food Service Assistant for the Food and Nutrition Services Department, from February 11, 2019 to March 1, 2019. (SOFs 6, 7, 12, 44). In the approximately 18 days Plaintiff was employed, he had numerous performance issues: he was tardy on multiple occasions; neglected his work duties; was reported for disappearing during his shifts, and returning smelling like smoke; and finally, violated a call in policy. (SOFs 22-25, 33, 34). As a result, Plaintiff was terminated. (SOF 44). Plaintiff now alleges that Tift violated 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, by discriminating against him due to his race and retaliating against him.

**STATEMENT OF FACTS[1]**

Tift is a not-for-profit healthcare system that serves as a regional referral center for all of South Central Georgia. It provides a wide range of care with more than one hundred physicians, employing over seventeen hundred individuals, making it Tift County's single largest employer and health care provider. (SOF 1).

On January 24, 2019, Plaintiff applied for the Food Service Assistant position and was interviewed by Kelly Fullum, Department Director, and Anthony Laub, contracted department consultant.[2] (SOFs 3, 6, 7). Despite Plaintiff's unreliable and inconsistent employment history,

---

[1] The undisputed facts are set forth in the Statement of Material Facts (hereinafter cited as "SOF(s) ___"), filed contemporaneously herewith. The following summarized facts are taken from the Statement of Material Facts. Defendant will also cite to specific facts in the record, as appropriate, in the argument portion of their brief.

[2] In 2018 and 2019, Tift's FANS Department underwent significant managerial and process changes in order to rectify departmental inefficiencies. (SOF 2). As part of this initiative, Tift contracted with Soriant, Inc. --- and was provided with a contractor, Anthony Laub, who was

**D**Error! Bookmark not defined.

Fullum was impressed by Plaintiff's interview, and hired Plaintiff for the Food Service Assistant position. (SOF 7, 9). Plaintiff accepted his employment offer, and began new hire orientation training on February 11, 2019. (SOF 12). During orientation, Plaintiff was educated on Tift policies and procedures, including work expectations, time clock procedures, and attendance expectations. (SOF 12-16, 19, 20).

Following several days of orientation, Plaintiff began working in the purchasing and receiving department. He was initially assigned to the stockroom. (SOF 21). Within Plaintiff's first few days of work, Steven Harper, sanitation supervisor, began receiving staff complaints about Plaintiff's work performance. (SOFs 22-24). Specifically, Harper received complaints that Plaintiff was not performing his work duties, and he would constantly sit at the desk, or disappear from the area completely and return smelling like cigarettes.[3] (SOFs 23-24). As a result, Plaintiff was moved to the dishwashing station to see if he would improve in the new station while working with a tenured employee as his specifically assigned trainer. (SOF 24).

Unfortunately, Plaintiff did not improve in that area either. Although assigned to work with a specific trainer, Plaintiff consistently ignored the directions and worked with other employees. (SOFs 23-24). Dishes would consistently be backed up, and Plaintiff was often nowhere to be found. (SOF 25). During the short two weeks Plaintiff was employed, he was tardy multiple times, or would show up at his work-station late, even when he clocked in on time. (SOFs

---

assigned to help with various improvements until a new director was hired. As a contracted consultant, Laub assisted in addressing and improving many issues facing the department, including reducing waste and costs, realigning roles and job responsibilities, and providing leadership and structure. (SOFs 3, 4). Kelly Fullum was eventually hired in October 2018, as the new department director. (SOF 8).

[3] In addition to the obvious import of an employee performing work as assigned, and not taking breaks outside of the normal break times, at the time, Tift had a nicotine free policy for all employees, and an absolute ban of smoking on the premises of the hospital.

3

22-25, 36). Additionally, the complaints continued even in the new station. Fullum received complaints that Plaintiff would not stay in his work area, he would stay on extended breaks wandering the facility, he did not take direction from employees training him, and he would clock in, but not show up or be able to be located within the department. (SOFs 23-25). It quickly became apparent to the FANS management and employee team that Plaintiff was simply not performing as needed/expected.

After Plaintiff's second week of employment, he was scheduled to be off on February 27th and 28th. However, on the 27th, he was scheduled for a "call in shift." (SOFs 19, 33-35, 45). The "call in shift" was a process previously implemented by Fullum as an attempt to ensure coverage in the department in case extra staff was needed. (SOFs 5, 19, 33). This policy/requirement was explained to Plaintiff. Notwithstanding his knowledge of the requirement, Plaintiff inexcusably failed to call in. (SOFs 19, 33, 34).

As a result, seeing no improvement and Plaintiff's overall lack of performance in his first few weeks of employment---a time in which most newly hired employees strive to perform their best---Fullum recommended Plaintiff's termination. (SOFs 17, 18, 22-25, 33-36, 43). The termination was approved, and on March 1, 2019, during Plaintiff's next scheduled shift, Plaintiff was terminated. (SOFs 43-46).

Plaintiff has now initiated the current lawsuit claiming race discrimination. Plaintiff also alleges that his termination was in retaliation for a complaint he made to human resources several days prior to his termination. On February 25, 2019, Plaintiff met with Jasmine Thurston, human resources generalist. (SOF 31). Plaintiff told Thurston that during a conversation earlier that day with Laub, Laub made a racially offensive remark—allegedly correlating the need of hard work to that of a "Mexican" or a "slave." (SOFs 28, 29, 31). According to Plaintiff, the conversation did

4

not last long, and was not said to Plaintiff in a demeaning manner, but he decided to report it according to Tift's policy. (SOFs 10, 11, 28-31). As a result, during his break following the conversation, he reported it to Thurston. Thurston documented the complaint in order to investigate. (SOF 31). Prior to the conclusion of Thurston's investigation, as explained above, Plaintiff failed to call in on his call-in shift two days later, violating the policy, and the decision was made to terminate his employment. (SOFs 19, 31-34, 43, 44).

## ARGUMENTS AND CITATIONS OF AUTHORITES

### I. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when, in viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden of establishing the absence a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). See Fickling v. United States, 507 F.3d 1302, 1304 (11th Cir. 2007). Once the moving party has met its initial burden, the nonmoving party must identify the specific facts that show a genuine issue for trial. Celotex, 477 U.S. at 323-24. The nonmoving must show, beyond the pleadings, that a genuine issue of material fact exists. Id. at 324. Unsupported self-serving statements by the party opposing summary judgment are insufficient to avoid summary judgment, see Midwestern Waffles, Inc. v. Waffle House, Inc., 734 F.2d 705, 714 (11th Cir. 1984); and speculation does not create a genuine issue of fact precluding summary judgment. See Cordoba v. Dillard's Inc., 419 F.3d 1169, 1181 (11th Cir. 2005).

### II. STANDARD FOR EVALUATING EMPLOYMENT DISCRIMINATION CLAIMS

"[T]he plaintiff in an employment discrimination lawsuit always has the burden of demonstrating that, more probably than not, the employer took an adverse employment action

against him on the basis of a protected personal characteristic." Wright v. Southland Corp., 187 F.3d 1287, 1292 (11th Cir. 1999). The nature of discrimination suits generally renders the "traditional framework" of direct evidence inadequate because a plaintiff cannot easily prove "the state of mind of the person making the employment decision." Id. at 1290. Thus, there are three ways in which a plaintiff can establish a claim of employment discrimination: "by presenting direct evidence of discriminatory intent; by demonstrating through statistics." Earley v. Champion Int'l Corp., 907 F.2d 1077, 1081 (11th Cir. 1990); or, as the case here, through circumstantial evidence—traditionally analyzed by the burden shifting standard laid out in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

Under this analysis, Plaintiff must first prove a *prima facie* case of discrimination. McDonnell Douglas, 411 U.S. at 802. If Plaintiff meets this burden, then the burden of production shifts to Tift to articulate a legitimate, nondiscriminatory reason for its actions. Id. at 254-55. Once Tift has met its burden of production, Plaintiff's *prima facie* case is rebutted, and Plaintiff must then "show by a preponderance of the evidence that [Tift's] legitimate reason [was] not the reason that actually motivated its conduct, that the reason [was] merely a 'pretext for discrimination.'" MacPherson v. University of Montevallo, 922 F.2d 766, 774 (11th Cir. 1991) (citations omitted). The ultimate burden of persuasion remains with Plaintiff at all times where the McDonnell Douglas analysis is applied. Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981).

While the Eleventh Circuit has analyzed claims brought in violation 42 U.S.C. §1981 ("§1981") and under Title VII of the Civil Rights Act of 1965, as amended, 42 U.S.C. §2000e *et seq.* ("Title VII") similarly, the U.S. Supreme Court has recently held that the plaintiff has the ultimate burden in proving race was a "but-for" cause of the adverse action in a §1981 claim.

Comcast Corp. v. National Assoc. of Afr. Am.-Owned Media, 140 S. Ct. 1009, 1019 (2020). This is a heightened standard than the one provided for under Title VII, and the plaintiff retains the burden throughout. Id. As explained *infra*, Plaintiff is unable to demonstrate his discrimination claim should survive under Title VII. Therefore, Plaintiff cannot prove a heightened standard of relief under the "but for" standard for his § 1981 discrimination and retaliation claims either.

III.   PLAINTIFF CANNOT MAKE OUT A PRIMA FACIE CASE OF RACE DISCRIMINATION

Interestingly, although Plaintiff has brought a race discrimination suit, he does not think he was terminated because of his race. When asked during his deposition if Plaintiff believed that he was terminated because of his race, Plaintiff responded "[n]ot exact to that. . ." (SOF 48). However, since Plaintiff has not dismissed his claim, the following analysis is necessary—showing regardless, Defendant is entitled to summary judgment.[4]

In establishing a *prima facie* case for race discrimination, Plaintiff must show: (1) he was a member of a protected class; (2) he was qualified for the job; (3) he was subjected to an adverse employment action; and (4) his employer treated similarly situated employees outside of his protected class more favorably. Crawford v. Carroll, 529 F.3d 961, 970 (11th Cir. 2008). Plaintiff cannot meet the fourth element of his claim.

Plaintiff is an African-American male, who was terminated, however he cannot and has not shown that there were any "similarly situated" employees that were treated more favorably

---

[4] Defendant recognizes the McDonnell Douglas framework is not the only standard available for discrimination claims, but is the most common analysis. Thus, Defendant analyzes Plaintiff's claim of race discrimination under this traditional framework. However, the reasoning and facts applied throughout the analysis also show that Plaintiff's claim would not survive under the other prevalent theories as well, mixed-motive or the mosaic theory provided by Smith v. Lockheed-Martin Corp., 644 F.3d 1321 (11th Cir. 2011) and Quigg v. Thomas Cty. Sch. Dist., 814 F.3d 1227 (11th Cir. 2016). Indeed, two weeks of employment gives Plaintiff very few tiles to utilize in a mosaic argument---especially coupled with Plaintiff's own belief that he was not terminated because of his race.

7

than he was.  Plaintiff must prove that he was treated differently from other individuals with whom he was "similarly situated in all material respects." Lewis v. City of Union City, 918 F.3d 1213, 1231 (11th Cir. 2019) (en banc).  A similarly situated comparator will ordinarily (1) have engaged in the same basic conduct as the plaintiff; (2) have been subject to the same employment policy, guideline, or rule as the plaintiff; (3) have been under the jurisdiction of the same supervisor as the plaintiff; (4) and share the plaintiff's employment history. Id. at 1223-24.  Plaintiff cannot identify an appropriate comparator because no other employee engaged in the compilation of the same repeated problems Plaintiff displayed during his short time employed there.

While Plaintiff may attempt to argue that there were other employees with tardiness issues that were not terminated, they are not sufficient comparators. There have indeed been other employees, both African American and Caucasian, who had issues with tardiness, call-ins or work performance in the Department. In fact, staffing issues, and personnel issues were one of the reasons the FANS department as a whole was being restructured for improvement, and plans/policies were implemented in an attempt to address them. (SOFs 2-5, 13, 14, 19, 39, 40, 41). Many of the policies were being put into place right before, during and after Plaintiff's employment. Many were implemented by Fullum, as the new Director. (SOFs 14-17, 19). However, there is simply no evidence that another employee displayed the extent of Plaintiff's lack of work ethic and repeated problems in such a short time period—right after being hired. As explained by Fullum, the only other employees that displayed similar bad habits in the first week or two of their employment simply quit—prior to the need for termination. (SOFs 22-25, 33, 35, 36, 39, 40, 41, 46). Plaintiff cannot show a single other employee that had complaints about their work performance, failed to perform in two separate stations in the department, was repeatedly

tardy, and failed to call-in, all within the first few weeks of their employment. There are none. (SOFs 22-25, 33, 35, 36, 39, 40, 41, 46).

IV.   PLAINTIFF CANNOT MAKE OUT A PRIMA FACIE CASE OF RETALIATION

Plaintiff alleged retaliation in violation of §1981 and Title VII, claiming he was terminated after he participated in "protected activity" when he complained to Human Resources alleging Laub made a discriminatory comment. In order to establish a *prima facie* case of retaliation, Plaintiff must show: (1) that he engaged in statutorily protected activity; (2) that he suffered an adverse employment action; and (3) a causal link between the protected activity and the adverse action. Kidd v. Mando Am. Corp., 731 F.3d 1196, 1211 (11th Cir. 2013). Plaintiff is unable to prove a prima facie case. While it is undisputed that Plaintiff did complain to Thurston regarding Laub's alleged comment, Plaintiff's complaint does not constitute "protected activity", nor can he show that his termination was connected.

Under the opposition clause, "a plaintiff must show that he had a good faith, reasonable belief that the employer was engaged in unlawful employment practices," in order to demonstrate he participated in a protected activity. Weeks v. Harden Mfg. Corp., 291 F.3d 1307, 1311 (11th Cir. 2002) (quotation omitted). In this case, Plaintiff must demonstrate a subjective belief that Tift was engaged in unlawful employment practices, and that his belief was "objectionably reasonable in light of the facts and record presented." Id. at 1312. "The reasonableness of the employee's belief is measured against existing substantive law. No actual unlawfulness is required but the opposed conduct must be close enough [to unlawful] to support an objectively reasonable belief that is." Van Portfliet v. H&R Block Mortgage Corp., 290 F. App'x 301, 303 (11th Cir. 2008) (internal citations omitted).

9

D**Error! Bookmark not defined.**

As fully explained below, although Plaintiff found the word choice offensive, the comment was isolated and in the context of a conversation regarding hard work. (SOFs 26-30, 32). The complained of comment does not rise to the level of harassment/hostile working environment. And although, if true, the comment was unprofessional and not allowed by Tift, Tift encourages all employees to report inappropriate behavior and "discrimination" or "harassment" (SOFs 10, 11). Plaintiff's complaint does not legally constitute "protected activity" under the statutes.

Regardless, even if Plaintiff's complaint constituted protected activity, Plaintiff has no evidence of causation. Plaintiff's only argument that his termination directly resulted from his complaint is temporal proximity. Temporal proximity alone is not enough to prove causation. The Eleventh Circuit, en banc, recently explained, "While close temporal proximity between the protected conduct and the adverse employment action can establish pretext when coupled with other evidence, temporal proximity alone is insufficient." Gogel v. Kia Motors Manufacturing of Georgia, Inc., 967 F.3d 1121, 1190 n.15 (11th Cir. 2020). Plaintiff has no evidence connecting the complaint with his termination---especially when he failed to call in, further violating Tift policy in between the two incidents. Two days after his complaint to HR, Plaintiff admittedly violated the call in policy by not calling in to see if he was needed to work. (SOFs 31, 33, 34, 44-47). "Intervening acts of misconduct can break any causal link between the protected conduct and the adverse employment action." Henderson v. FedEx Express, 442 F. App'x 502, 507 (11th Cir. 2011). His failure to call in on February 27th, further evidence of his unacceptable work performance, caused his termination.

V.   THERE ARE LEGITIMATE, NONDISCRIMINATORY REASONS FOR PLAINTIFF'S TERMINATION

Even assuming that Plaintiff could make a *prima facie* case of discrimination or retaliation, the burden of production would shift to Tift to articulate a legitimate, nondiscriminatory reason

D**Error! Bookmark not defined.**

for Plaintiff's termination. Chapman v. Al Transp., 229 F.3d 1012, 1024 (11th Cir. 2000) (en banc); Wascura v. City of S. Miami, 257 F.3d 1238, 1242-43 (11th Cir. 2001).

Tift has produced credible evidence that Plaintiff was terminated because of his own poor work performance: violation of Tift and FANS department policies, excessive tardiness, and not taking direction from coworkers or supervisors. (SOFs 12-16, 19, 22-25, 33-36, 46). Plaintiff was deficient in his job performance and work habits and violated Tift's standards of conduct, thus he was appropriately terminated.

VI.     PLAINTIFF CANNOT DEMONSTRATE PRETEXT

Once the employer has met its burden of articulating a legitimate, nondiscriminatory reason for the employment action, the employee's prima facie case is rebutted and the employee, who retains the burden of persuasion throughout, must then "show by a preponderance of the evidence that the defendant's legitimate reasons were not the reasons that actually motivated its conduct, that the reasons were merely a 'pretext for discrimination.'" MacPherson v. University of Montevallo, 922 F.2d 766, 774 (11th Cir. 1991); Carter v. City of Miami, 870 F2d 578, 584 (11th Cir. 1989) (in order to avoid a directed verdict for the employer once it produces evidence of a legitimate, nondiscriminatory reason, the plaintiff must present "significantly probative" evidence of a pretext). "If the plaintiff fails to proffer sufficient evidence to create a genuine issue of material fact as to whether each of the defendant's proffered reasons is pretextual, the defendant is entitled to summary judgment." Wascura v. City of S. Miami, 257 F.3d 1238, 1243 (11th Cir. 2001). Historically, courts refuse to second-guess business decisions of employers, as courts "do not sit as a super-personnel department that reexamines an entity's business decisions. Elrod v. Sears, Roebuck & Co., 939 F.2d 1466, 1470 (11th Cir. 1991). "Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and

rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that decision." Chapman v. AI Transp., 229 F.3d 1012, 1030 (11th Cir. 2000) (en banc). An "employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason." Nix v. WLCY Radio/Rahall Commc'ns, 738 F.2d 1181, 1187 (11th Cir. 1984). To show that a reason is pretextual, the plaintiff must prove both that the reason was false and that discrimination (and/or retaliation) was the real reason for the action. Milledge v. Rayonier, Inc., 192 F. App'x 863, 865 (11th Cir. 2006).

Plaintiff cannot argue with Tift's legitimate reasons for his termination. His work performance, or lack thereof, was witnessed by Harper and Fullum as well as his other co-workers. (SOFs 22-25, 33-36, 46). In fact, Plaintiff himself even admits most of them. (SOFs 33-36). In addition to Plaintiff's testimony that he does not believe he was terminated due to his race, Plaintiff admits that he was tardy several times, and even admits that he failed to call-in during his assigned call-in shift—and had no explanation for why. (SOFs 48, 33-36).

Additionally, as to Plaintiff's race claim, the fact that Fullum hired Plaintiff, knowing his race, a mere three weeks earlier, (SOFs 7-9), makes Plaintiff's race claim even more disingenuous. "An individual who is willing to hire and promote a person of a certain class is unlikely to fire them simply because they are a member of that class. This general principal applies regardless of whether the class is age, race, sex, or some other protected classification." Williams v. Vitro Servs., Inc., 144 F.3d 1438, 1443 (11th Cir. 1998). The Eleventh Circuit has held that when the same actor is involved in the decisions to hire and terminate, there is a permissible inference that no discriminatory animus exists. Id. There is no evidence that Fullum developed a racial animus against Plaintiff within three weeks. Indeed, it is an irrational argument. Additionally, in 2019, 66% of the employees in the FANS department were African-American. (SOFs 9, 42, 48). The

dishwashing station was comprised of five African-American males, Plaintiff being one of them. (SOFs 24, 37, 38). Since the FANS department was predominantly comprised of African-American employees (SOFs 37, 38, 42), it stands to reason that Tift did not terminate Plaintiff because of his of race.

Plaintiff simply has no evidence of pretext---no rebuttal evidence or evidence of discriminatory/retaliatory motive or cause. This is even more evident under the but-for causation standard required for retaliation. In order to show pretext in a case alleging retaliation, a plaintiff must prove that his protected activity was the "but for" cause of the adverse action, not just a motivating factor. University of Tex. Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 360, 133 S. Ct. 2517, 2533 (2013) (explaining a plaintiff must prove that his protected activity was the "but for" cause of the adverse action, not just a motivating factor).

VII. PLAINTIFF CANNOT MAKE OUT A PRIMA FACIE CASE OF A HOSTILE WORK ENVIRONMENT BASED ON RACE

In addition to claiming his termination was due to his race, Plaintiff also alleges he was subjected to a hostile work environment. A hard argument for Plaintiff given he was employed for less than three weeks.

To prove a hostile work environment claim, an employee must show that "the workplace is permeated with discriminatory intimidation, ridicule, and insult, which is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (citation and internal quotation marks omitted). When Plaintiff's harassment claim is based on race, he must prove that: (1) he belongs to a protected class, (2) he was subjected to unwelcome harassment, (3) the harassment was based on his race, (4) the harassment was sufficiently severe or pervasive to alter the terms of his employment and create a discriminatorily abusive working environment, and (5) the employer is

responsible for such environment under a theory of vicarious or direct liability. Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1275 (11th Cir. 2002). See Reeves v. C.H. Robinson Worldwide Inc., 594 F.3d 798, 808 (11th Cir. 2010). Plaintiff has no evidence to meet this burden.

To establish that conduct was sufficiently severe or pervasive to alter the terms or conditions of his employment, Plaintiff must prove that his work environment was both subjectively and objectively hostile. Mendoza v. Borden, Inc., 195 F.3d 1238, 1246 (11th Cir. 1999) (en banc). "[T]he harassment must result in both an environment that a reasonable person would find hostile or abusive and an environment that the plaintiff subjectively perceived to be abusive." Edmond v. Univ. of Miami, 441 F. App'x 721, 724 (11th Cir. 2011) (citation omitted). In order to be considered objectively severe or pervasive, relevant factors include: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." Harris v. Forklift Sys. Inc., 510 U.S. at 23. "In ... all harassment cases, [the relevant] inquiry requires careful consideration of the social context in which particular behavior occurs and is experienced by its target." Id. at 81. This is a high standard for plaintiffs to meet because Title VII is not meant to act as a "general civility code." Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998).

Here, the only fact Plaintiff seems to claim was "harassment" or "hostile" was the single alleged comment made by Laub.[5] Yet even using the phrase/term "work harder than a slave", and "outwork a Mexican," according to Plaintiff, Laub was illustrating the intensity of hard work and what it would take to become a supervisor. (SOFs 26-30, 32, 47). The comments were not directed

---

[5] Although this comment is disputed, for purposes of summary judgment only, Defendant treats it as fact.

at Plaintiff. Laub did not call Plaintiff a slave or a Mexican.[6]  (Pl.'s Dep. 55:3-19). Plaintiff also admits that at the time of Laub's alleged comment, Laub did not say it aggressively: "he didn't say it meanly to me. He said it to me calm." (SOF 29, Pl.'s Dep. 60:16-17).  During their conversation, Plaintiff explained that Laub discussed the necessary work ethic to becoming a supervisor.  (SOFs 28, 29).  Plaintiff stated, Laub had also previously discussed with Plaintiff working harder and using "elbow grease" when working at the dishwashing station.  (Pl.'s Dep. 120:1-4).  Laub even shared his own employment history and experience with hard work "busting rocks" when he previously worked in Las Vegas. (Pl.'s Dep. 55:17-19).

Other than the alleged statement on February 25, 2019, Plaintiff testified, Laub "never said anything racist to me or – or anything like that."  (SOF 30, Pl.'s Dep. 59:10-11).  Plaintiff also stated that he would see Laub at work maybe twice during a week.  (SOF 26).  Thus, Plaintiff would have interacted with Laub four times during the first two weeks he was employed.  (SOFs 26, 32).  Plaintiff also admits that after February 25th, Plaintiff did not see or speak to Laub—he was scheduled to be off two of the following days until March 1st, the date he was terminated. (SOFs 32, 44, 45).  This one comment, two weeks after starting work, and with someone that Plaintiff does not have frequent or reoccurring interaction with, does not establish an environment that Plaintiff could subjectively perceive to be hostile or abusive. A single comment does not a hostile environment make. Offhand comments and isolated incidents will not amount to discriminatory changes in terms and conditions of employment. <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775, 788 (1998); <u>Fortson v. Carlson</u>, 618 F. App'x 601, 607 (11th Cir. 2015) (finding that twelve incidents of harassment over seven months, nine of the incidents including racially

---

[6] Plaintiff admits he does not recognize or have heritage as a Hispanic/Latino individual. (Pl.'s Dep. 24:13-14).

derogatory language as "black ass" or "black ass fool," did not create a hostile work environment). See Harrington v. Disney Regional Entertainment, Inc., 276 Fed. App'x. 863, 876 (being called a racial epithet one time does not amount to a hostile work environment). Furthermore, the "mere 'utterance of an . . . . epithet which engenders offensive feelings' does not sufficiently affect the conditions of employment." Harris, 510 U.S. at 20 (quoting Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67(1986)). "Racial slurs spoken by co-workers ha[ve] to be so 'commonplace, overt and denigrating that they create [ ] an atmosphere charged with racial hostility." Edwards v. Wallace Cmty. Coll., 49 F.3d 1517, 1521 (11th Cir. 1995) (quoting EEOC v. Beverage Canners, Inc., 897 F.2d 1067, 1068 (11th Cir. 1990)).

Furthermore, even if the comment indeed occurred, there is no basis for holding Tift liable for the single comment made by Laub—a contractor who had no disciplinary/termination authority over Plaintiff. (SOFs 3, 26, 27, 32, 43, 44, 47). Vance v. Ball State Univ., 570 U.S. 421, 424 (2013). Thus, the Court should supply a negligence standard. That is, Plaintiff must show that Tift was negligent in controlling his working conditions. Id. at 427 (citing Faragher v. City of Boca Raton, 524 U.S. 775, 789 (1998)). To satisfy his burden, Plaintiff must prove that Tift knew of the offensive conduct but failed to take appropriate corrective action. See Faragher, 524 U.S. at 799; Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 758-759 (1998). He cannot meet that burden. Once Tift became aware of Plaintiff's complaint, appropriate measures were taken in investigating the complaint. (SOFs 10, 11, 31).

Tift has a dedicated human resources team, a policy prohibiting harassment/discrimination and a reporting procedure for employee complaints. Tift takes great care to promptly correct any alleged incident of harassment by immediately opening an investigation and taking corrective action where appropriate. (SOFs 10, 11).   Here, Plaintiff followed the reporting procedure, and

D**Error! Bookmark not defined.**

Thurston conducted an investigation. (SOF 10, 11, 31).  At the conclusion of the investigation, there was no evidence to substantiate Plaintiff's complaint. The investigation was concluded, and remedial measures were determined not necessary. By that time, Plaintiff had of course violated the call-in policy and had been terminated. Even if Plaintiff was still employed, the results of the investigation did not warrant further measure be taken.

## CONCLUSION

For the foregoing reasons, Defendant respectfully submits that summary judgment should be granted in favor as to all claims brought by Plaintiff in the instant action.

This 18th day of June 2021.

                                                          CONSTANGY, BROOKS, SMITH & PROPHETE, LLP

                                                          /s/ Alyssa K. Peters
                                                          ALYSSA K. PETERS
                                                          Georgia Bar No. 455211

577 Mulberry Street, Suite 710
P.O. Box 1975
Macon, GA 31202-1975
(478) 750-8600
(478) 750-8686 (facsimile)
apeters@constangy.com

**D****Error! Bookmark not defined.**

## CERTIFICATE OF SERVICE

I hereby certify that on this date, I have filed the foregoing DEFENDANT'S BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

Eleanor Mixon Attwood
Legare, Attwood & Wolfe, LLC
125 Clairemont Avenue
Suite 380
Decatur, GA 30030
emattwood@law-llc.com

This 18th day of June, 2021.

                                                  CONSTANGY, BROOKS, SMITH
                                                  & PROPHETE, LLP

                                                  /s/ Alyssa K. Peters
                                                  ALYSSA K. PETERS
                                                  Georgia Bar No. 455211

577 Mulberry Street, Suite 710
P.O. Box 1975
Macon, GA 31202-1975
(478) 750-8600
(478) 750-8686 (facsimile)
apeters@constangy.com

**D****Error! Bookmark not defined.**