**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF GEORGIA**
**VALDOSTA DIVISION**

| | |
|---|---|
| BRIAN EDWARDS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 7:20-CV-00003-WLS |
| ) | |
| TIFT REGIONAL HEALTH ) | |
| SYSTEM, INC., ) | |
| ) | |
| Defendant. ) | |

## PLAINTIFF'S RESPONSE BRIEF TO DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT

Brian Edwards ("Edwards") had a short run of employment at Tift Regional. Shortly after he started, the contractor helping to direct the department made racist comments to him. That same day he heard them; Edwards reported the racist comments to Human Resources. Within a few days of his report, Tift Regional fired Edwards. As a result of these actions, Tift Regional violated Title VII and Section 1981. Because Edwards has presented evidence from which a jury could find such violations occurred, Tift Regional's motion should be denied with regard to Edwards's hostile work environment and retaliation claims.

## I.      FACTUAL BACKGROUND

Prior to 2018, the Food and Nutrition Services ("FANS") department of Tift Regional had been plagued by high turnover and Tift Regional wanted someone with expertise to bring the department out of turmoil. (Fullum Dep., p. 26). The department was short staffed and often placed people into positions before they were properly trained. (Laub Dep., pp. 37-38; Harper Dep., pp. 24, 46-47). Tardies and absences among employees were routine. (Fullum Dep., pp.

52-53).  Beginning in June 2018, Tift Regional contracted with Soriant, Inc. to staff an Interim Director within its Food and Nutrition Services ("FANS") department.  (Laub Dep., p. 17).   That interim director was a white man named Tony Laub ("Laub").  Laub was a very hands-on, in the trenches Interim Director who did not just sit in his office and do administrative work.  (Laub Dep., pp. 50-51; Harper Dep., pp. 16-17; Fullum Dep., pp. 68-69).   He regularly interacted with the FANS food service aides and frontline supervisors.  (Laub Dep., pp. 50-51; Harper Dep., pp. 16-17; Fullum Dep., pp. 68-69)

In October 2018, Tift Regional hired Kelly Fullum to become the permanent Director of FANS.  (Fullum Dep., p. 6).  From October 2018 through January 2019, while Fullum was in a period of observation, she worked in conjunction with Laub to direct the department.  (Fullum Dep., p. 36; Laub Dep., pp. 20, 52).  Even after the observation period ended in February 2019, Fullum would discuss employee performance with Laub.  (Fullum Dep., pp. 19-21, 36).  The Human Resources Generalist assigned to FANS noticed that Laub and Fullum were very much partners in how they handled employee relations matters.  (Thurston Dep., pp. 178-179; Fullum Dep., p. 36).

In February 2019, Brian Edwards worked at Tift Regional as a food service aide for less than three weeks.  (Thurston Dep., pp. 20, 131).   On February 25, 2019, Laub said to Edwards "you have to work harder than a slave and outwork the Mexicans."  (Edwards Dep., pp. 40-42).  As a black man with Hispanic relatives, Edwards took offense at these comments.  (Edwards Dep., pp. 24, 46).  A bit later that same day, Edwards went to see Jasmine Thurston ("Thurston"), the Human Resources generalist assigned to FANS, to report the racially discriminatory comments that Laub had made.[1]  (Edwards Dep., pp. 42-43; Thurston Dep., pp. 52-55).

---

[1] Thurston did not remember Edwards mentioning the slave comment but testified that she had

Edwards was not the first FANS employee to complain about Laub.  By the time Edwards arrived at Tift Regional in February 2019, Thurston had fielded multiple complaints about Laub. (Thurston Dep., pp. 31-32, 34-37, 38-45).  Those complaints ranged from general complaints about Laub that he was a hard-nosed manager to more specific complaints that he made racist comments. (Thurston Dep., pp. 34-37).  Shockingly, on one occasion in the summer of 2018, *fifteen* black FANS employees came to Thurston's office all at once to complain about Laub.  (Thurston Dep., pp. 38-45).  She fielded their concerns in the conference room, and not in her office, so she could accommodate that number of employees.  (Thurston Dep., pp. 38-45).  Some of the complaints in that session were about Laub's racist comments and attitudes.  (Thurston Dep., pp. 38-45). Thurston then alerted her supervisor, Dr. Indera Rampal-Harrod, Vice President and Chief Human Resources Officer, of the employees' reports at that meeting.  (Folsom, p. 10; Thurston Dep., pp. 43-45).  Rampal-Harrod conducted an investigation and recommended remedial action be taken against Laub including removing him from the premises, none of which was done.  (Thurston Dep., pp. 43-45).  Thurston estimated that by the time Edwards arrived at Tift Regional, she had fielded roughly ten complaints—both race related and race neutral--about Laub from employees, only one of which was the fifteen-person conference room discussion.  (Thurston Dep., pp. 104-107).

With that knowledge of prior complaints, Thurston set out to investigate Edwards' complaint in late February 2019.  On the same day Edwards made the report to Thurston, Thurston began to reach out to witnesses Edwards identified.  (Thurston Dep., p. 56, Ex. 4).  She continued to do so until February 27, 2019.  (Thurston Dep., p. 56, Ex. 4).  Because the witnesses claimed that their work schedules did not allow for them to be interviewed, Thurston reached out to Kelly

---

heard that report from another black employee about Laub.  (Thurston Dep., p. 55).

Fullum, the Director of FANS.  (Thurston Dep., p. 56, 162-163, Ex. 4).  Thurston testified that she did so on February 25, 26, or 27. (Thurston Dep., pp. 58, 60-61).  At that time, Thurston relayed to Fullum the racist comments Edwards had reported.  (Thurston Dep., pp. 60-61, 152).  Thurston also reached out to her supervisor, Lori Folsom, revealing what she had heard from Edwards. (Thurston Dep., p. 59).

By March 1, 2019, within five days of Edwards' report to Thurston, Fullum fired Edwards. (Thurston Dep., pp. 154-156, Ex. 4).  When Edwards pressed for an explanation, Fullum looked up in the air and said "uhh, you don't have a good work ethic."  (Edwards Dep., p. 52).   Irritated by his firing, Folsom and Thurston confronted Fullum about Edwards' termination.  (Thurston Dep., pp. 64-65, 152-153).  When questioned about her motives, Fullum simply stated that Edwards was "very vocal" and liked to "back talk."  (Thurston Dep., pp. 190-191, Ex. 4).   She also tried to elaborate that Edwards was resisting advice given to him by co-workers but then admitted she had not seen any such exchange and the advice was not actually based on policy. (Thurston Dep., pp. 64-66, Ex. 4).

## II.    ARGUMENT AND CITATION TO AUTHORITY

At summary judgment, "[t]he court may not weigh evidence to resolve factual disputes – if a genuine issue of fact is found, summary judgment **must** be denied."  *Hutcherson v. Progressive Corp.*, 984 F.2d 1152, 1155 (11th Cir. 1993) (emphasis added).  The Court "must draw all reasonable inferences in favor of [Edwards]."  *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000).  The Court "should give credence to the evidence favoring [Edwards]" and may only credit evidence supporting the Defendant "that is uncontradicted and unimpeached," and, even then, only "to the extent that that evidence comes from disinterested witnesses."  *Id.*

In employment discrimination and retaliation cases, "the plaintiff will always survive summary judgment if he presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory [or retaliatory] intent." *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011). "A plaintiff may raise a reasonable inference of the employer's discriminatory [or retaliatory] intent through various forms of circumstantial evidence," and "[a] triable issue of fact exists if the record, viewed in a light most favorable to the plaintiff, presents a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination [or retaliation] by the decisionmaker." *Id.* (internal quotation and citation omitted).

Alternatively, a plaintiff may survive summary judgment using the familiar *McDonnell-Douglas* framework. There, the plaintiff will first adduce evidence which, taken as true, would prove a *prima facie* case. This is followed by a burden shift to the defendant to articulate a legitimate non-discriminatory reason for the adverse action. Finally, the plaintiff must demonstrate evidence showing the defendant's reason to be pretextual. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 502-505 (1973). A plaintiff may demonstrate pretext either by showing that a discriminatory reason more than likely motivated the employer, or by showing that the proffered reason for the decision is not worthy of belief. *Young v. General Foods Corp.*, 840 F.2d 825, 828 (11th Cir. 1998). The former showing relies on evidence of the decision maker's discriminatory or retaliatory motive. The latter showing involves evidence of "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action. *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997).

## A.     Edwards' *Prima Facie* Case of Retaliation[2]

To establish a *prima facie* case of retaliation, the plaintiff must show that: (1) he engaged in statutorily protected activity; (2) he suffered an adverse employment action; and (3) a causal connection existed between the protected activity and the adverse employment action. *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001).   A plaintiff's retaliation claim can survive summary judgment even if the underlying discrimination claim does not. *See Gupta v. Florida Bd. of Regents*, 212 F.3d 571, 586 (11th Cir. 2000) ("To recover for retaliation, the plaintiff 'need not prove the underlying claim of discrimination which led to her protest,' so long as she had a reasonable good faith belief that the discrimination existed.").

 "Once a prima facie case has been demonstrated, the defendant must proffer a legitimate nondiscriminatory (nonretaliatory) reason for the adverse employment action." *Id.*  If the employer meets its burden, the burden shifts back to the employee to show the preferred reason is a pretext for retaliation. *Berman v. Orkin Exterminating Co., Inc.*, 160 F.3d 697, 702 (11th Cir. 1998).  Tift Regional incorrectly argues that Edwards cannot meet the first and third prongs.

### 1.     Protected Activity

Despite Defendant's meritless contentions to the contrary, there is no legitimate question that Edwards engaged in protected opposition conduct when he reported the racially hostile work environment because he "communicate[d] [his] belief that discrimination is occurring to the employer." *Demers v. Adams Homes of Northwest Florida, Inc.*, 321 Fed. Appx. 847, 852 (11th Cir. 2009); *see also*, *Rollins v. State of Fla. Dept. of Law Enforcement*, 868 F.2d 397, 400 (11th Cir. 1989) (anti-retaliation protections of Title VII and Section 1981 are "not limited to individuals

---

[2] Edwards agrees that summary judgment should be granted on his disparate discipline claim based on race.

who have filed formal complaints, but extend [] as to those who . . . informally voice complaints to their superiors or who use their employers' internal grievance procedures"). Despite the straightforward facts presented, Tift Regional argues that Edwards could not have an objectively reasonable belief that the statements "you need to outwork a Mexican and work harder than a slave" amounted to race discrimination. That is a frivolous argument. A jury could most certainly find that telling a black man to work as hard as a slave is offensive, much more so than if someone said that to a white person. Additionally, challenging anyone to outwork a Mexican is equally racist and absurd, and especially offensive to Edwards because has Hispanic relatives, a fact which Tift omitted in its brief. (Edwards Dep., p. 46). Moreover, the CHRO testified that Laub's comments could offend a reasonable person. (Folsom Dep., pp. 61-62). Finally, Thurston, a trained Human Resources professional, plainly understood Edwards had made a race discrimination complaint since she immediately began an investigation of the race concerns regarding Laub and alerted multiple supervisors of such.

### 2.     *Causal Connection*

To satisfy the causation element, the plaintiff need only show that the protected activity and the adverse action were not "wholly unrelated." *Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1337 (11th Cir. 1999). Since Edwards engaged in protected speech to Thurston and was fired at most within five days of that report, causation is established.

Unfortunately for the Court, Tift Regional conflates the pretext analysis with the causation prong. The citation to *Gogel v. Kia Motors Manufacturing of Georgia, Inc*. for the proposition that temporal proximity alone cannot establish pretext is misplaced in the *prima facie case* analysis. Contrary to Tift Regional's argument, temporal proximity alone is sufficient to establish causation to satisfy the *prima facie* case. *See Thomas v. Alabama Home Const.*, 271 Fed. Appx.

865, 868 (11th Cir. 2008) (finding that decision to terminate employee "within weeks" of employee's internal complaint supported jury's finding of retaliation and noting that decision maker's awareness of protected conduct at time of adverse decision generally satisfies the causation element); *Entrekin v. City of Panama City*, 376 Fed. Appx. 987, 997 (causation established where employer decided to terminate plaintiff two weeks after plaintiff filed Title VII complaint); *Donnellon v. Fruehauf Corp.*, 794 F.2d 598, 601 (11th Cir. 1986) ("short period of time of" one month between complaint and adverse decision, alone, established causation); *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) (two and half month time frame established causation).

In an effort to distract from the very clear chain of events, Tift Regional cites to *Henderson v. FedEx Express*, 442 Fed. Appx. 502, 507 (11th Cir. 2011), an unpublished opinion, for the proposition that intervening acts of misconduct can break any causal link between the protected conduct and the adverse employment action.   However, the court in *Henderson* mentioned that reason only as a fallback position after it ruled that causation was not established for other reasons. The main reason causation was not established in that case was that the decisionmaker did not have knowledge of the opposition conduct.  *Henderson*, 442 Fed. Appx. at 507.  There is no such issue in this case as the evidence clearly establishes that Thurston told Fullum about Edwards' report of Laub's racist comments within a day or two of his report and before his termination. (Thurston Dep., pp. 56, 58, 60-61, 152, 162-163, Ex. 4).   Moreover, the termination documents created by Fullum were dated two days after Edwards complained and after or on the same day Thurston told Fullum.  (Fullum Dep., Exs. 11, 12; Thurston Dep., pp. 58, 60-61, 152).

Secondly, as for the idea that intervening acts can break causal links, that again conflates *prima facie* causation with the pretext analysis.  The "*Henderson* approach appears to go well

beyond the purpose of the prima facie case." *El-Saba v. Univ. of S. Ala.*, 2015 U.S. Dist. Lexis 137286 *56-57 (S.D. Ala. 2015). "'Intervening acts'" are more appropriately analyzed after a *McDonnell Douglas prima facie* case is shown, when the employer may then articulate legitimate, non-discriminatory/retaliatory reasons for the adverse employment action. In pleading his Title VII claims, [Edwards] is not even required to allege a 'classic' *McDonnell Douglas prima facie* case, much less also rebut possible nondiscriminatory reasons as pretextual." *El-Saba*, 2015 U.S. Dist. Lexis 137286 at *57.   Moreover, the *Henderson* opinion cited to *Kiel v. Select Artificials, Inc*., 169 F.3d 1131, 1136 (8th Cir. 1999) wherein the plaintiff requested an accommodation under the ADA, one of many that had been granted before he was rude and abusive towards his employer.   Thus, there was evidence that indicated the employer was not acting with a retaliatory animus given the repeated accommodation it had made.   In this case, Edwards made one complaint and was fired less than a week later.   That evidence establishes causation for purposes of the *prima facie* case.[3]

### B.     Tift Regional's Reasons are Pretext for Retaliation

A plaintiff may demonstrate pretext either directly, by showing that a discriminatory or retaliatory reason more than likely motivated the employer, or indirectly, by showing that the proffered reason for the decision is not worthy of belief.  *Young v. General Foods Corp*., 840 F.2d 825, 828 (11th Cir. 1998).   As to the latter method,

> [t]he districts court must, in view of all the evidence, determine whether the plaintiff
> has cast sufficient doubt on the defendant's proffered nondiscriminatory reasons to

---

[3] To the extent the Court perceives a disconnect between Edwards complaining about Laub and Fullum exacting the termination, the position and professional relationship of a biased person and the supposed decision-maker within the company may raise an inference that the termination decision was made for a retaliatory motive. *Wright v. Southland Corp*., 187 F.3d 1287, 1306, 1306 n.26 (11th Cir. 1999).

permit a reasonable factfinder to conclude that the employer's proffered legitimate reasons were not what actually motivated its conduct. The district court must evaluate whether the plaintiff has demonstrated such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence.

*Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997) (quotations and citations omitted). Evidence of pretext bars summary judgment.

### 1.   *But For Causation*

As an initial matter, "but for" causation does not mean sole causation. Defendant relies on *U. of Tex. SW. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013), which only clarified that retaliation claims could not be proven using a mixed-motive causation standard. Instead, retaliation claims "must be proved according to traditional principles of but-for causation." *Id.* Traditional principles of but-for causation do not require that the protected reason be the only reason for the adverse action. *See Evanston Ins. Co. v. Sandersville R.R. Co.*, 2016 U.S. Dist. LEXIS 134162 at *29-30 (M.D. Ga. Sept. 29, 2016) ("But-for causation does not mean sole causation, i.e., 'standing alone'."). "On the contrary, but-for causation broadly defines causation, requiring only an act or omission without which the event would not have occurred." *Id*. The court explained further:

> [T]o use a common law school example, but for the ringing of the plaintiff's alarm clock, the plaintiff would not have awakened, and if she had not awakened, she would not have been driving through an intersection later in the morning where she was struck by the defendant's vehicle. Both the guard and the clock are but-for causes of injuries, but, thanks to Justice Cardozo, we know they are not the proximate cause of those injuries. The number of but-for causes of any particular event is limited only by the time available to conjure them up. While but-for causation analysis is important to determine actual cause, to suggest that but-for causation has somehow come to mean sole causation would turn the whole concept of causation on its head.

*Id.; see also, McDowell v. Massey Auto*, 2017 U.S. Dist. LEXIS 74373 (M.D. Ala. May 15, 2017) (ruling that plaintiff did not have to prove age was sole motivating factor; rather, a but-for reason).

This Court has also addressed this issue.  In *Kingsley v. Tellworks Communs.*, 2017 U.S. Dist. LEXIS 92619 (N.D. Ga. May 24, 2017), the defendant argued that the plaintiff could not prove her retaliation claim because she testified that a non-retaliatory reason could have motivated the employer meaning that she could not satisfy the but-for standard.  *Id.* at *93-94.  This Court disagreed explaining that but-for causation did not equate to sole causation.  *Id.*  The Court explained further that plaintiff's "beliefs" suggested that defendants may have had multiple reasons for their actions, which, in and of itself, is not necessarily proof that none of these were "but for" causes.  *Id.*  The Supreme Court recently clarified that "but for" is the appropriate standard of causation in Title VII cases, but also clarified that there can be multiple "but for" causes and that "the adoption of the traditional but-for causation standard means a defendant cannot avoid liability just by citing some other factor that contributed to its challenged employment decision."  *Bostock v. Clayton County*, 140 S. Ct. 1731, 1739 (2020).  That is exactly what Tift Regional is trying to do.

Tift Regional contends that Edwards' performance during his two weeks of probationary employment was so bad that it needed to fire him.   This rationale does not pass the smell test, as shown below. Thus,

> the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose. Such an inference is consistent with the general principle of evidence law that the factfinder is entitled to consider a party's dishonesty about a material fact as "affirmative evidence of guilt."

*Reeves v. Sanderson Plumbing Products, Inc.*, 120 S. Ct. 2097, 2108 (2000).  *Accord, Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1344-45 (11th Cir. 2011) (discriminatory intent inferred where employer's claimed reliance on rank as termination criteria was contradicted by its

treatment of other employees under similar circumstances, even though those employees were not comparators).

### 2.    *Evidence of Pretext*

First, the very close temporal proximity of less than five days between Edwards' protected activity and his termination provides very compelling evidence of pretext.[4]   *Trice v. Infinity Staffing Solutions*, LLC, 2017 U.S. Dist. LEXIS 130115 at 36 (N.D. Ga. 2017).

Tift Regional's ever-changing justifications for Edwards' termination are also evidence of pretext.  *Cleveland v. Home Shopping Network, Inc.,* 369 F.3d 1189, 1195 (11th Cir. 2004) (the shifting reasons given by the employer allowed the jury to find its explanation unworthy of credence, and consequently to infer the real reason was [plaintiff's protected trait]); *Pagan-Colon v. Walgreens of San Patricio, Inc.*, 697 F.3d 1, 10 (1st Cir. 2012) (employer's "shifting explanations … support the jury's verdict" for plaintiff).  At first, Fullum told Edwards when he pressed her that he did not have a "good work ethic."  (Edwards Dep., p. 52).  Then, within days of that conversation, Fullum switched tactics claiming that Edwards was "very vocal" and "back talked."  (Thurston Dep., pp. 190-191, Ex. 4).  Then, she alleged that he did not receive advice very well but admitted that she never actually saw that with her own eyes.  (Thurston Dep., pp. 64-66, Ex. 4).  Those are just the difference in the reasons given by Fullum verbally.  The differences on paper are even more stark.

---

[4] "The evidence of pretext may include the same evidence offered initially to establish the prima facie case." *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1088 (11th Cir. 2004); *see Ogwo v. Miami Dade Cty. Sch. Bd., No.* 15-11190, 702 Fed. Appx. 809, 2017 U.S. App. LEXIS 12344, 2017 WL 2954567, at *1 (11th Cir. July 11, 2017) ("In showing pretext, the plaintiff may rely on the same evidence he relied on in establishing his *prima facie* case.").

In fact, Defendant has produced two different termination documents that were both generated by Fullum.  (Fullum Dep., Exs. 11, 12).  Fullum had no explanation for the difference.  (Fullum Dep., pp. 83-84).  On the unsigned version, the "Description of the Current Deficiency" was "team member was a No Call No Show for two consecutive scheduled shifts.  They were 2/14/2019 and 02/15/2019."  (Fullum Dep., Ex.11).  But, according to the Tift Regional timecard, Edwards was at work on both February 14th and 15th.  (Fullum Dep., Ex. 10).  Thus, one of the documents is a lie.  Wholly apart from the mere fact of Defendant's shifting justifications, that Fullum at first generated a written termination paper based on an objectively false claim is strong evidence of pretext.

The other termination document generated by Fullum claimed that "Brian is being terminated for his continued attendance issues and his no call/no show (NC/NS) shift that occurred on 2/27/2019."  (Fullum Dep., Ex. 12).  Thus, according to the termination document actually presented to Edwards, the reason for termination was limited to the attendance issues, not Fullum's oral explanation to Human Resources that Edwards was being vocal or failing to follow instructions.[5]  A reasonable jury could infer from these differences in justifications that they are unworthy of belief.

In both termination documents, Fullum included the improvement measures she supposedly conducted to help Edwards improve his alleged shortcomings.  But, Edwards denies Fullum ever speaking with him about any performance issue other than the no call/no show on February 27.  (Edwards Dep., pp. 32-36).  Thus, there is a jury issue regarding whether Fullum

---

[5] Fullum did include references to those alleged shortcomings in the "History of Previous Improvement Measures" section of the termination documents.  (Fullum Dep., Ex. 12).  However, Edwards disputes that she ever raised these issues with him.  (Edwards Dep., pp. 32-36).  More importantly, they are not included in the section of the termination document clearly delineated as "Description of Current Deficiency" wherein she only included attendance issues.

actually counseled Edwards as Fullum claims or whether Fullum is lying about this to cause Edwards's retaliatory termination.   Moreover, the documents were created on February 27, 2019, two days *after* Edwards complained about Laub's racist comments and after or on the same day Thurston notified Fullum of such complaint.[6]  (Fullum Dep., Exs. 11, 12).  In other words, a jury could reasonably infer from the evidence presented by Edwards that it was not until Fullum learned of Edwards' complaint that she counseled him on any performance issue.

Additionally, Tift Regional had a progressive discipline policy, which it ignored to fire Edwards.  (Thurston Dep., p. 18, Ex. 2).  Viewing the evidence in the light most favorable to Edwards, Tift Regional skipped all of the steps of that policy to terminate Edwards on February 27, 2019, just two days after he complained about racist comments.  Choosing to ignore the progressive discipline policy when it came to Edwards is further evidence of pretext.  *See Vessels v. Atlanta Indep. Sch. Sys.,* 408 F.3d 763, 771-772 (11th Cir. 2005) (an employer's deviation from its own procedures is evidence of pretext).  Even within Fullum's understanding of Tift Regional policy, she did not follow those for Edwards.  When Edwards was employed, Fullum allowed for three consecutive absences before she issued a write up to an employee. (Fullum Dep., pp. 50-53).  Fullum did not even discipline employees for being tardy until after Edwards was fired, and when she did it was only after an employee was tardy seven times.  (Fullum Dep., pp. 50-53).  Edwards was tardy seven times in two weeks by a few minutes each time and was never absent.  (Fullum Dep., pp. 70-74, Exs. 10, 22).   Thus, based on how Fullum doled out punishment regarding attendance at the time Edwards was hired, she did not even adhere to that standard when she terminated Edwards.

---

[6] The date of both documents is 2/27/2019 and Fullum wrote in the last sentence on page 2 of both documents "I am wanting to not continue his employment in my department as of today 2/27/2019."  (Fullum Dep., Exs. 11, 12).

Edwards' third piece of pretext evidence are the white employees or employees who had not complained of race discrimination that were not terminated for attendance issues.[7]   A typical means of establishing pretext is through comparator evidence.  *Silvera v. Orange County Sch. Bd.*, 244 F.3d 1253, 1259 (11th Cir. 2001); *Sparks v. Pilot Freight Carriers, Inc.*, 830 F.2d 1554, 1563 n.20 (11th Cir. 1987).  A comparator is "a similarly-situated employee who committed the same violation of work rules, but who was disciplined less severely than [the plaintiff]."  *Rioux v. City of Atlanta*, 520 F.3d 1269, 1276 (11th Cir. 2008).  "[T]o determine whether employees are similarly situated," courts evaluate "whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways."  *Burke–Fowler v. Orange County, Fla.*, 447 F.3d 1319, 1323 (11th Cir.2006) (quotation marks omitted).   Fullum identified at least three employees that she terminated after **multiple** instances of absences or no call/no shows, but only after she had followed the progressive discipline policy in each of their cases.  (Fullum Dep., pp. 37-43, 46-49).  As for employees that she did not terminate for chronic attendance issues, the number was even larger.  (Fullum Dep., pp. 46-57).   In fact, Fullum admitted that the frequency of employees being tardy was so high that they could not discipline them, otherwise "we wouldn't have a department."  (Fullum Dep., p. 109).

Additionally, Steven Harper, Edwards' white direct supervisor, was a repeat offender of the same sorts of policies Edwards violated.  From the time frame of 2015 through 2019, Tift Regional issued the following discipline to Harper:  probation for having a bad attitude; a written

---

[7] In response to RPDs served by Edwards, Tift Regional claimed it had not received any complaints about Laub other than the one filed by Edwards.  (*See* RPD Response No. 9, attached as Ex. A). Additionally, Tift Regional stated it had no documents that related to any complaint with the EEOC filed by an employee in Edwards' supervisory chain.  (*See* RPD Response No. 8, attached as Ex. A).  Thus, there are no comparators that filed a claim a race discrimination against Laub or any other of Edwards' supervisors as Edwards had done.

warning for attendance; a verbal warning for repeated and excessive tardiness; and a final warning for having a negative attitude.  (Harper Dep., Exs. 13, 14, 15, 16).    Harper has never been terminated from Tift Regional.  (Harper Dep., p. 6).

Not only do the individual reasons provided by Tift Regional fail to constitute legitimate, non-retaliatory reasons, the culmination of other facts purposely ignored by Tift Regional creates a triable issue regarding the unlawful intent for firing Edwards.  *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011) ("the plaintiff will always survive summary judgment if he presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory [or retaliatory] intent.").   "A plaintiff may raise a reasonable inference of the employer's discriminatory [or retaliatory] intent through various forms of circumstantial evidence," and "[a] triable issue of fact exists if the record, viewed in a light most favorable to the plaintiff, presents a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination [or retaliation] by the decisionmaker."   *Id.* (internal quotation and citation omitted).    In this instance, the temporal proximity, failure to follow the progressive discipline policy, and the presence of comparators who were not terminated could allow a reasonable jury to conclude that Edwards was terminated for his opposition conduct.

### C.    Hostile Work Environment

To establish a hostile work environment claim based on harassment by a supervisor, the plaintiff must show (1) that he belongs to a protected group; (2) that he was subjected to unwelcome racial harassment; (3) that the harassment was based on his gender; (4) that the harassment was sufficiently severe or pervasive to alter the terms or conditions of his employment; and (5) that the employer knew or should have known of the harassing conduct but failed to take prompt remedial action.  *Smith*, 652 F. Supp. 2d at 1323; *Miller v. Kenworth of Dothan, Inc*., 277

16

F.3d 1269, 1275, 1278 (11th Cir. 2002). Tift Regional has argued only that the last two prongs were not met. Tift Regional also argues in very succinct fashion that it is entitled to the *Faragher/Ellerth* defense. As Edwards will explain, both arguments are meritless as he has presented evidence from which a jury could find the harassment severe or pervasive and the defense does not apply under the facts presented.

### 1.    *Laub's Harassment was Severe or Pervasive*

"Either severity *or* pervasiveness is sufficient to establish a violation of Title VII." *Reeves v. C.H. Robinson Worldwide, Inc*., 594 F.3d 798, 808 (11th Cir. 2010) (emphasis added). An evaluation of such conduct should include its frequency; its severity; whether it was physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfered with an employee's work performance.[8]  *Id.*  The Eleventh Circuit Court of Appeals has held that there is not a "'magic number' of racial or ethnic insults" that an employee must tolerate before racial harassment rises to the level of severe or pervasive. *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1276 (11th Cir. 2002).  Nevertheless, the courts engage in bean counting.  The question this case poses is whether two comments over a two-week period is pervasive.  Most cases that discuss the issue involve employees who worked with the employer months if not years.   In this case, because Edwards was terminated so quickly after his hiring and complaining about Laub's racist comments, he was not afforded the "opportunity" to endure more racist comments. However, given his term of employment, he endured one racist comment a week.  That is frequent enough to be considered pervasive under the case law.  *See Moore v. Pool Corp*., 304 F. Supp. 3d 1148, 1160 (N.D. Ala. 2018) (finding that plaintiff who was called a "nigger" five to seven times

---

[8] However, proof is not required on each factor individually, as the court employs a "totality of the circumstances" approach.  *Smith v. Pefanis*, 652 F. Supp. 2d 1308, 1327 (N.D. Ga. 2009) (Forrester, J.).

a year met the severe or pervasive standard); *Johnson v. Booker T. Washington Broadcasting Serv., Inc.*, 234 F.3d 501, 506, 509 (11th Cir. 2000) (harassment was severe or pervasive when plaintiff alleged fifteen incidents of unwelcome and harassing conduct over a four-month period).

### 2.    *Tift Regional is not Entitled to Faragher/Ellerth Defense*

A defending employer may raise an affirmative defense to liability or damages if it meets its burden of showing that it (1) exercised reasonable care to prevent and correct promptly any sexually harassing behavior; and (2) the employee unreasonably failed to take advantage of any preventive or corrective opportunities the employer provided.  *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998), and *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998). The *Faragher/Ellerth* defense is not available when an employer had knowledge of the harassment. Because Tift Regional knew of Laub's harassment, the defense is not available.

There is evidence in the record that Tift Regional knew about Laub's tendencies to make racially charged comments to his subordinates.  By the time Edwards arrived at Tift Regional in February 2019, Thurston had fielded multiple complaints about Laub.  (Thurston Dep., pp. 31-32, 34-37, 38-45).  Those complaints ranged from Laub being a hard-nosed manager to Laub making racist comments.  (Thurston Dep., pp. 34-37).  Shockingly, on one occasion in the summer of 2018, fifteen black FANS employees came to Thurston's office all at once to complain about Laub. (Thurston Dep., pp. 38-45).  She fielded their concerns in the conference room, and not in her office, so she could accommodate that number of employees.  (Thurston Dep., pp. 38-45).  Some of the complaints were about Laub's racist comments and attitudes.  (Thurston Dep., pp. 38-45). Thurston then alerted her supervisor, Dr. Indera Rampal-Harrod, Vice President and Chief Human Resources Officer, of the employees' reports.  (Folsom, p. 10; Thurston Dep., pp. 43-45).  Rampal-Harrod conducted an investigation and recommended remedial action be taken against Laub

including removing him from the premises, none of which was done.  (Thurston Dep., pp. 43-45).

Thurston estimated that by the time Edwards arrived at Tift Regional, she had fielded roughly ten

complaints about Laub from employees, only one of which was the fifteen-person conference room

discussion.  (Thurston Dep., pp. 104-107).  Folsom did not want to do anything because Laub was

a contractor/vendor and not an actual employee with Tift Regional.[9]  (Thurston Dep., p. 59).  Thus,

there is sufficient evidence from which a jury could infer that Tift Regional had knowledge of

Laub's harassing conduct before Edwards even arrived and failed to take corrective measures.

Moreover, there is evidence in the record to establish that the harassment was open and

obvious thereby putting Tift Regional on notice.  *See Morgan v. Fellini's Pizza, Inc*., 64 F. Supp.

2d 1304, 1313-14 (N.D. Ga. 1999) (denying summary judgment to employer where evidence of

harassing comments made in open and obvious fashion in front of supervisors); *Simon v.

Morehouse School of Medicine*, 908 F. Supp. 959, 970 (N.D. Ga. 1995) (denying summary

judgment for employer because a reasonable finder of fact could conclude that the treatment of

---

[9] Tift Regional argues that because Laub was not an employee that it cannot be held liable for his racial harassment of its employees.  That suggestion is ridiculous.  Section 1981, a claim asserted by Edwards, dictates that an employer must protect its employees from the racial harassment they endure from customers.  *See Moore v. Pool Corp*., 304 F. Supp. 1148, 1160 (N.D. Ala. 2018) (Section 1981 claim asserted by employee who suffered racial harassment at hands of customer actionable).  By logical extension, an employer can be liable for a vendor's harassment of an employee.  Under Title VII, an employer is likewise liable to an employee harassed by a contractor or vendor if it had knowledge of such harassment and failed to take remedial action. *See* 29 CFR 1604.11(e) ("An employer may also be responsible for the acts of non-employees with respect to sexual harassment of employees in the workplace, where the employer … knows or should have known of the conduct and fails to take immediate and appropriate corrective action.")  Tift Regional's own Employee Handbook prohibited harassment of employees by anyone when it stated "Any type of harassing conduct in the workplace is prohibited.  This includes management, supervisors, co-workers, physicians, vendors, visitors, or patients."  (Thurston Dep., Ex. 3). Additionally, Laub did have disciplinary power over Edwards as Fullum consulted with Laub about employee performance throughout his term with Tift Regional. (Thurston Dep., pp. 178-179; Fullum Dep., p. 36).  Finally, if negligence was somehow the standard for holding Tift Regional liable because Laub was a contractor, Edwards has certainly satisfied that standard given the extent of Tift Regional's knowledge as to his harassment.

plaintiff was apparent to management or should have been based on evidence of frequent and non-discrete sexual advances toward plaintiff); *Mills v. Amoco Performance Prod., Inc.*, 872 F. Supp. 975, 987 (S.D. Ga. 1994) ("the conduct that occurred, if [plaintiff's] evidence is believed, consisted of a continual pattern of offensive, sexually suggestive, and explicit acts  the alleged conduct was frequent and non-discrete; it would not easily go unnoticed by shift supervisors or others in managerial positions who interacted with [plaintiff] and her coworkers on a regular basis.  Drawing all reasonable inferences from the summary judgment record in [plaintiff's] favor, as the Court must, a jury could find that [plaintiff's] mistreatment was conspicuous and should have been apparent to management.").  Edwards testified Laub made the racist comments in front of his co-workers.  (Edwards Dep., pp. 47-48).

## III.   CONCLUSION

The Court should deny Defendant's motion for summary judgment on the hostile work environment and retaliation claims.  The motion should be granted with regard to Plaintiff's racial termination claim as he voluntarily dismisses it.

Respectfully submitted on this 16th day of August 2021.

LEGARE, ATTWOOD & WOLFE, LLC

*/s/ Eleanor M. Attwood*
Eleanor M. Attwood
Georgia Bar No. 514014

Decatur Town Center Two
125 Clairemont Avenue
Suite 380
Decatur, GA 30030
470-823-4000 (Telephone)
470-201-1212 (Fax)
emattwood@law-llc.com

**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF GEORGIA**
**VALDOSTA DIVISION**

| | |
|---|---|
| BRIAN EDWARDS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 7:20-CV-00003-WLS |
| ) | |
| TIFT REGIONAL HEALTH ) | |
| SYSTEM, INC., ) | |
| ) | |
| Defendant. ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on this date, I have filed the foregoing **PLAINTIFF'S RESPONSE**

**TO DEFENDANT'S BRIEF IN SUPPORT FOR SUMMARY JDUGMENT** with the Clerk of

Court using the CM/ECF system which will automatically send email notification of such filing to

the following attorneys of record:

Alyssa K. Peters
apeters@constangy.com


LEGARE, ATTWOOD & WOLFE, LLC

*/s/ Eleanor M. Attwood*
Eleanor M. Attwood
Georgia Bar No. 514014