IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | |
|---|---|
| BRIAN EDWARDS, | : |
| | : |
| v. | : CASE NO.: 7:20-CV-3 (WLS) |
| | : |
| TIFT REGIONAL HEALTH SYSTEM, INC., | : |
| | : |
| Defendants. | : |
| | : |

## **ORDER**

Before the Court is Defendant Tift Regional Health Systems Inc.'s ("Tift Regional") Motion for Summary Judgment. (Doc. 55), The Motion has been fully briefed and is ripe for review. For the reasons set forth herein, Defendants' Motion for Summary Judgment (Docs. is **GRANTED**.

**I.   Procedural History**

Plaintiff Edwards filed a Complaint for discrimination and retaliation pursuant to Title VII of the Civil Rights Act of 1964, as amended at 42 U.S.C. § 2000e *et seq.* and 42 U.S.C. § 1981. (Doc. 1.) The Complaint alleges that, among other things, Defendant Tift Regional harassed Plaintiff Edwards on account of his race, terminated him, maintained discriminatory intent toward him, and retaliated against him for participating in a protected activity. (*Id.*) Plaintiff's complaint also alleges that because of his discriminatory termination and retaliation on the part of Defendant Tift Regional, he suffered loss of income, humiliation, and other indignities. (*Id.*) Defendant answered the Complaint on March 10, 2020. (Doc. 8.) Plaintiff then moved to amend his Complaint on May 19, 2020 to include Defendant Soriant, Inc., the parent company for which one of the supervisors involved in Plaintiff's claim actually worked for while working at Defendant Tift Regional in "a consultant capacity." (Doc. 17.) The Court granted Plaintiff's request and Plaintiff amended his Complaint to include Soriant, Inc. as a Defendant on June 22, 2020. (Docs. 21, 22.)

1

The Court issued a discovery and scheduling order on June 24, 2020. (Doc. 24.) Discovery for the case was initially set to close on Monday, December 21, 2020. (*Id.* at 2.). On October 30, 2020 the parties filed a Joint Motion to Extend Discovery for a period of seventy-five (75) days. (Doc. 38.) The Court granted the joint motion and extended discovery to March 5, 2021. (Doc. 40.) However, before the close of discovery, the parties again jointly filed to extend the discovery period based on the "late addition of Soriant as a Defendant and the current COVID-19 pandemic" as well as scheduling issues. (Doc. 51.) The Court granted the joint motion and then extended the close of discovery to May 4, 2021. (Doc. 52.) Shortly after, Plaintiff Edwards filed a stipulation of dismissal for Defendant Soriant, Inc., which was confirmed by an Order dismissing the claims against Soriant, Inc. on March 10, 2021. (Docs. 53, 54.) Accordingly, discovery closed on May 4, 2021 and Defendant Tift Regional timely filed its Motion for Summary Judgment. (Doc. 55.) The Motion for Summary Judgment is ripe for review. *See* M.D. Ga. L.R. 7.3.1.A.

## II. Standards of Review

### A. Federal Rule of Civil Procedure 56

Federal Rule of Civil Procedure 56 allows a party to move for summary judgment where no genuine issue of material fact remains, and the party is entitled to judgment as a matter of law. "Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Maddox v. Stephens*, 727 F.3d 1109, 1118 (11th Cir. 2013). "A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc). "An issue of fact is 'material' if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "It is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Tipton v. Bergrohr GMBH-Siegen*, 965

2

F.2d 994, 998 (11th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The movant bears the initial burden of showing, by reference to the record, that there is no genuine issue of material fact. *See Celotex*, 477 U.S. at 323; *Chapman*, 229 F.3d at 1023. The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by demonstrating to the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *See Celotex*, 477 U.S. at 322-24. Once the movant has met its burden, the nonmoving party is required "to go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324. To avoid summary judgment, the nonmoving party "must do more than summarily deny the allegations or 'show that there is some metaphysical doubt as to the material facts.'" *Matsushita*, 475 U.S. at 586 (citations omitted). Instead, the nonmovant must point to competent record evidence that would be admissible at trial. *See also Jones v. UPS Ground Freight*, 683 F.3d 1283, 1294 (11th Cir. 2012) (quoting *Macuba v. Deboer*, 193 F.3d 1316, 1322 (11th Cir. 1999)) (noting that hearsay may be considered on a motion for summary judgment only if it "could be reduced to admissible evidence at trial or reduced to admissible form."). Such evidence may include affidavits or declarations that are based on personal knowledge of the affiant or declarant. *See* Fed. R. Civ. P. 56(c)(4).

On a motion for summary judgment, the Court must view all evidence and factual inferences drawn therefrom in the light most favorable to the nonmoving party and determine whether that evidence could reasonably sustain a jury verdict. *See Celotex*, 477 U.S. at 322-23; *Allen*, 121 F.3d at 646. However, the Court must grant summary judgment if there is no genuine issue of material fact and the movant is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56(c).

**B. Local Rule 56**

Local Rule 56 requires the following:

> The respondent to a motion for summary judgment shall attach to the response a separate and concise statement of material facts, numbered separately, to which the respondent contends there exists a genuine issue to be

3

> tried. Response shall be made to each of the movant's numbered material facts. All material facts contained in the moving party's statement which are not specifically controverted by the respondent in respondent's statement shall be deemed to have been admitted, unless otherwise inappropriate.

M.D. Ga. L.R. 56. As stated above, the Parties complied with the Federal Rules of Civil Procedure, the Local Rules, and the order of this Court by timely filing a motion for summary judgment, a response and reply thereto, along with a surreply and sur-surreply, and a statement of material facts and a response thereto. The Court will now address this ripe motion.

Here, Plaintiff Edwards and Defendant Tift Regional have complied with Local Rule 56 by including with their briefs a Statement of Undisputed Material Facts. (Docs. 55-2, 67-2.) Noting that this requisite standard is met, and with the above given facts and evidence in mind, the Court now turns to merits of Defendant Tift Regional's Motion for Summary Judgment.

### III.  Factual Background

The following facts are derived from the Plaintiff's Amended Complaint (Doc. 22), Defendant Tift Regional's Motion and Statement of Undisputed Material Facts (Doc. 55); Plaintiff's Response (Doc. 67); Defendant's Reply (Doc. 73); and the record in this case. Where relevant, the factual summary also contains undisputed and disputed facts derived from the pleadings, the discovery and disclosure materials on file, and any affidavits, all of which are construed in a light most favorable to Plaintiff as the nonmoving party. *See* Fed. R. Civ. P. 56; *Matsushita*, 475 U.S. at 587-88.

In 2018, Defendant Tift Regional's Food and Nutrition Services Department ("FNS") experienced managerial changes, employee turnover, and other departmental issues, including regular periods of being short-staffed. (Docs. 55-2 at ¶¶ 2, 5; 67-2 at ¶ 2.) Defendant Tift Regional contracted with Soriant, Inc., who provided Defendant with an interim manager for the FNS while Defendant searched for a new permanent director. (Doc. 55-2 at ¶ 3; 67-2 at ¶ 4.) In June of 2018, Soriant, Inc. sent Tony Laub to the FNS to serve as the interim director and as a contractor assigned to help with department improvements.

4

(Doc. 55-2 at ¶ 3; 67-2 at ¶¶ 4-5.) Specifically, Laub was brought on to work with the FNS employees and address certain issues such as waste, costs, realigning staff roles and responsibilities, and providing leadership. (Doc. 55-2 at ¶ 4.) As the interim director, Laub frequently interacted with FNS employees. (Doc. 67-2 at ¶ 6.) In October 2018, Defendant Tift Regional hired Kelly Fullum as the permanent director of FNS and she began an observation period from October 2018 to January 2019 with the assistance of Laub. (Doc. 67-2 at ¶¶ 7-8)

Plaintiff Edwards, who is a Black male, was hired as a food service aide in January 2019 after interviewing with Laub and Fullum. (Doc. 55-2 at ¶¶ 6-7.) Fullum made the decision to hire Plaintiff in her capacity as FNS' Department Director. (*Id.* at ¶ 9.) Plaintiff's direct supervisor was Steven Harper, the Supervisor of the sanitation department. (*Id.* at ¶ 8.) However, Fullum and Laub worked together during the period of Plaintiff's employment at FNS and reportedly had disciplinary power over Plaintiff because of this arrangement. (Doc. 67-2 at ¶¶ 9-11.)

Upon his hiring, Plaintiff underwent an orientation training with Human Resources where he was informed of Tift Regional's policies and procedures, including the necessary time clock procedures. (Doc. 55-2 at ¶¶ 12-13.) Plaintiff was given written versions of the polices reviewed in the orientation and Plaintiff signed Tift Regional's employee handbook. (*Id.*) The employee handbook outlined Tift Regional's one hundred twenty (120) day probationary period for new employees as well as its policies on attendance and punctuality. (*Id.* at ¶ 13.) Per Tift Regional's policy, employees were required to be present at their workstations for their full shifts, be punctual, and to inform their supervisors of any tardiness or absences at least two hours prior to the start of their shifts. (*Id.* at ¶¶14-15.) The employee handbook explained that unacceptable conduct may be grounds for discipline and discharges depending on the individual case facts and history. (*Id.* at ¶15.) Unacceptable conduct was explained to include insubordination, walking away from a workstation without supervisor approval, smoking on Tift Regional property, neglecting work, failing to remain working till the end of a shift, and excessive absences or tardiness. (*Id.* at ¶ 16.) Further, employees could be terminated without documentation or notice within their one hundred

5

twenty (120) day probationary period if such conduct is present and did not improve. (*Id.* at ¶ 17.) Beyond the handbook and policy requirements, Fullum implemented a "call-in" policy to prevent short staffing, which required employees to call in between 8:00am and 8:30am of such a shift to confirm whether they needed to come in and actually work. (*Id.* at ¶ 19.)

Plaintiff began work for FNS in the stockroom unloading delivery trucks. (*Id.* at ¶ 21.) Immediately, Fullum and Harper began receiving complaints regarding Plaintiff's work and conduct. (*Id.* at ¶ 22.) These complaints stated that Plaintiff did not stay on task, did not complete all his duties, disappeared from his workstation, took extended breaks, smelled of cigarettes, and was tardy for multiple shifts. (*Id.* at ¶ 23.) In his second week of work, Plaintiff was moved to the dish washing area of FNS based on these complaints. (*Id.* at ¶ 24.) Plaintiff was tasked with training an employee but opted to talk to other coworkers instead. (*Id.*) Fullum and Harper witnessed Plaintiff's conduct, and Harper was sometimes unable to locate Plaintiff because he was either tardy, would not clock in, or would not be at his workstation. (*Id.* at ¶ 25.)

Plaintiff encountered Laub, a white male, in the course of his employment at Tift Regional. (Doc. 55-2 at ¶ 26; 67-2.) On February 29, 2019, in a conversation on the importance of working harder, Laub told Plaintiff that "you have to work harder than a slave and outwork Mexicans," a statement that offended Plaintiff. (Doc. Doc. 55-2 at ¶ 28; 67-2 at ¶¶ 13-14.) The same day, Plaintiff went to meet with Jasmine Thurston, the FNS human resources generalist, to report the racially discriminative comment from Laub. (Doc. 55-2 at ¶ 31; Doc. 67-2 at ¶ 15.) Per Thurston, Laub has received complaints about Laub's managerial style and comments, some of which were allegedly racist, prior to Plaintiff's report. (Doc. 67-2 at ¶ 16.) Thurston documented the complaint to investigate Plaintiff's allegations. (Doc. 55-2 at ¶ 31.) Thurston continued her investigation, including contacting witnesses to the incident, through February 27, 2019. (Doc. 67-2 at ¶¶ 24-25.) She also spoke to Fullum to inform her of the racist comment and relayed it to her supervisor, Lori Folsom. (Doc. 67-2 at ¶¶ 26-29.)

On February 27, 2019, Plaintiff failed to call in per the Tift Regional call-in policy for a shift. (Doc. 55-2 at ¶ 33.) Plaintiff was also reported to be late for shifts multiple times in

the first two weeks of his employment. (Doc. 55-2 at ¶ 36.) He also admitted to violating Tift Regional's hairnet policy. (Doc. 55-2 at ¶ 35.) Soon after, Fullum made the decision to terminate Plaintiff. (Doc. 55-2 at ¶ 43.) Laub was not on the premises when Plaintiff was fired. (Doc. 55-2 at ¶ 47.) Fullum informed Plaintiff of his termination and explained that he was dismissed due to his lack of work ethic and poor job performance. (Doc. 55-2 at ¶ 46; 67-2 at 33.) Thurston confronted Fullum about Plaintiff's firing, and Fullum explained that Plaintiff was "vocal" and engaged in "back talk." (Doc. 67-2 at ¶ 35.)

Fullum generated two different termination documents for Plaintiff. (Doc. 67-2 at ¶ 38.) The first stated that the reason Plaintiff was terminated was due to a "no call no show" on two separate occasions, despite timecards indicating he was present on the alleged days. (Doc. 67-2 at ¶¶ 39-40.) The second stated that the reason Plaintiff was terminated was due to his continued absences and the "no call no show" that occurred on February 27, 2019 just prior to his termination. (Doc. 67-2 at ¶ 41.)

Per Thurston, Tift Regional maintains a progressive discipline policy and that policy was ignored for Plaintiff. (Doc. 67-2 at ¶ 43.) Fullum stated in Plaintiff's termination documents that measures were taken to help Plaintiff improve his conduct, but Plaintiff contends in testimony that Fullum never spoke to him directly. (Doc. 67-2 at ¶ 42.) Per Plaintiff, Fullum allowed multiple employees to commit the same conduct and did not terminate them or follow the disciplinary procedure. (Doc. 67-2 at ¶¶ 45-51.) Plaintiff now asserts that Fullum's behavior is evidence of pretext for his firing due to alleged racial discrimination. (Doc. 67-2 at ¶¶ 43-51.) Tift Regional asserts that Fullum did not terminate Plaintiff because of his race. (Doc. 55-2 at ¶ 48.)

**IV.  Discussion**

Defendant Tift Regional contends it is entitled to summary judgment as it relates to Plaintiff's claims of race discrimination and retaliation under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981. The Court will consider Plaintiff's claims in turn

### A. Racial Discrimination Claims

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to

7

his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a)(1). "To adequately plead a case of racial discrimination, a plaintiff may present specific facts of either direct discriminatory intent or an inference of discrimination by circumstantial evidence." *Folks v. Tuscaloosa Cnty Sheriff's Dep't*, No. 7:07-CV-01726-LSC, 2008 WL 11422705, at \*6 (N.D. Ala. Apr. 17, 2008) (*citing Hill v. Metro. Atlanta Rapid Transit Auth.*, 841 F.2d 1533, 1538 (11th Cir. 1988)). When a plaintiff seeks to prove their discrimination claim through circumstantial evidence, the United States Court of Appeals for the Eleventh Circuit applies the burden-shifting framework established in *McDonnell Douglas Corp v. Green*, 411 U.S. 792, 802 (1973) and *Texas Department of Community affairs v. Burdine*, 450 U.S. 248 (1981). Plaintiff has not provided any direct evidence of discriminatory intent. *Moorer v. City of Montgomery*, 293 Fed. Appx. 684, 688 (11th Cir. 2008) (defining direct evidence as "evidence, which if believed, would prove the existence of a fact in issue without inference or presumption"). Therefore, the Court will apply the *McDonnell Douglas* burden-shifting framework. *See Cobb v. City of Roswell, Ga.*, 533 F. App'x 888, 893 (11th Cir. 2013).

This framework requires that a plaintiff must make a prima facie case establishing that: "1) the plaintiff was a member of a protected class, 2) she was qualified to do the job, 3) she was subjected to an adverse employment action, and 4) similarly situated employees outside the protected class were treated differently." *Holland v. Gee*, 677 F.3d 1047, 1055, (11th Cir. 2012). Once a plaintiff has made a prima facie case, a rebuttable presumption arises that the employer has acted illegally. *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1264 (11th Cir. 2010). "The employer can rebut that presumption by articulating one or more legitimate non-discriminatory reasons for its action." *Id.* If the employer does so, the burden shifts back to the plaintiff "to produce evidence that the employer's proffered reasons are a pretext for discrimination." *Id.* The ultimate burden of persuasion, however, "remains on the plaintiff to show that the defendant intentionally discriminated against her." *Id.*

In the same vein, a successful claim for discrimination under section 1981 requires that a plaintiff offer facts establishing "(1) that the plaintiff is a member of a racial minority;

8

(2) that the defendant intended to discriminate on the basis of race; and (3) that the discrimination concerned one or more of the activities enumerated in the statute." *Jackson v. BellSouth Telecomm.*, 372 F.3d 1250, 1270 (11th Cir. 2004). The United States Court of Appeals for the Eleventh Circuit has previously acknowledged that the requisite factors and remedies of Title VII and section 1981 are similar, and that Courts may apply the same framework when analyzing claims under both statutes. *See Abel v. Dubberly*, 210 F.3d 1334, 1338 (11th Cir. 2000); *Bryant v. Johnny Kynard Logging, Inc.*, 933 F.Supp. 2d 1272, 1298 (N.D. Ala. 2013). Plaintiff's claims for discrimination under Title VII and section 1981 do not differ factually or in argument. Thus, the Court shall analyze both claims in tandem. *See id.*

Plaintiff has not provided any direct evidence of discriminatory intent. *Moorer v. City of Montgomery*, 293 Fed. Appx. 684, 688 (11th Cir. 2008) (defining direct evidence as "evidence, which if believed, would prove the existence of a fact in issue without inference or presumption"). Therefore, the Court will apply the *McDonnell Douglas* burden-shifting framework. *See Cobb v. City of Roswell, Ga.*, 533 F. App'x 888, 893 (11th Cir. 2013).

It is undisputed that Plaintiff is a Black male who was an employee of Defendant Tift Regional in early 2019 and is therefore part of a protected class as a racial minority. *See Smith v. Mobile Shipbuilding & Repair, Inc.*, 663 F. App'x 793, 799 (11th Cir. 2016). It is also undisputed that Plaintiff was qualified for the job and that he suffered an adverse employment action in the form of termination. *See id.* Thus, the Court must evaluate whether Plaintiff established the remaining element for a prima facie case for race discrimination. *Holland v. Gee*, 677 F.3d at 1055.

In its motion for summary judgment, Defendant Tift Regional argues that Plaintiff cannot make out a prima face case for racial discrimination pursuant to Title VII of the 1964 Act, and therefore Plaintiff cannot make out a prima facie case for racial discrimination under section 1981. (Doc. 55-1 at 7.) Specifically, Defendant Tift Regional contends that Plaintiff fails to meet the fourth prong of the *McDonnell Douglas* framework, which requires that a plaintiff demonstrate that similarly situated employees outside of his protected class were treated differently. (*Id.*) In support of this argument, Defendant Tift Regional points out that Plaintiff provides no argument or evidence to sufficiently establish that any white or

9

non-Black employees were allowed to remain employed in similarly situated circumstances. (*Id.* at 8.) Defendant Tift Regional argues that its new policies, which were implemented just prior to Plaintiff's hiring, applied to all employees and that there is no evidence before ethe Court that any other employee engaged in the same type of conduct as Plaintiff. (*Id.*) Defendant Tift Regional points to record evidence, through deposition testimony and as well as physical exhibits, that show that though the FNS was experiencing issues with tardiness and work performance, only two other employees displayed such conduct to the same degree as Plaintiff, and both employees quit on their own volition. (*Id.*) Further, Defendant points out that employees to which Plaintiff references in his Response were not similarly situated as those employees had worked for Defendant for much longer periods than Plaintiff and were not employees subject to the one hundred twenty (120) day probationary period as outlined in Defendant's policy. (Doc. 73 at 8.) Notably, Plaintiff conceded in his Response that there was no genuine issue of material fact regarding his claims based on racial discrimination. (Doc. 67 at 6.)

Because Plaintiff conceded that no genuine issue of material fact exists on his discrimination claims, the Court does not need to analyze the claims. Based on the available facts, record evidence, and analysis above, the Court acknowledges Plaintiff's concession and finds that summary judgment in favor of Defendant Tift is appropriate on Plaintiff's claims for racial discrimination under Title VII and section 1981. Therefore, summary judgment is granted to Defendant Tift Regional on these claims. *See Celotex*, 477 U.S. at 322-23; *Allen*, 121 F.3d at 646.

### B. Plaintiff's Retaliation Claims

Title VII's anti-retaliation provision makes it unlawful for an employer to discriminate against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). "[T]o establish a *prima facie* case of retaliation, a plaintiff must show that (1) he engaged in a statutorily protected activity; (2) he suffered a materially

10

adverse action; and (3) he established a causal link between the protected activity and the adverse action." *Smith v. Naples Cmty. Hosp., Inc.*, 433 Fed. App'x 797, 799 (11th Cir. 2011); *see also McCann v. Tillman*, 526 F.3d 1370, 1375 (11th Cir. 2008). Once the plaintiff has met the "burden of establishing a prima facie case of retaliation, the employer may come forward with legitimate reasons for the employment action to negate the inference of retaliation." *Id.* at 800 (quotations omitted). "If the defendant offers legitimate reasons for the employment action, the plaintiff then bears the burden of proving by a preponderance of the evidence that the reasons offered by the defendant are pretextual." *Goldsmith v. City of Atmore*, 996 F.2d 1155, 1163 (11th Cir. 1993).

Like claims for discrimination, the Eleventh Circuit has previously acknowledged that the requisite analysis and remedies for claims of retaliation under Title VII and section 1981 are similar, and that courts may apply the same framework when analyzing claims under both statutes. *See Bryant v. Jones*, 575 F.3d 1281, 1307 (11th Cir. 2009); *Goldsmith v. Bagby Elevator Co., Inc.*, 513 F.3d 1261, 1277 (11th Cir. 2008). The Court acknowledges that Plaintiff's claims for retaliation under Title VII and section 1981 do not differ factually or in argument. Therefore, the Court considers Plaintiff's retaliation claims under Title VII and section 1981 as stated in his amended complaint in tandem. *See id.*

In its motion for summary judgment, Defendant Tift Regional argues that Plaintiff cannot make a prima facie case for retaliation because Plaintiff cannot establish a causal connection between his protected activity and his termination. (Doc. 55-1 at 10.) Further, Defendant Tift Regional contends that Plaintiff cannot establish that reporting Laub's comment to HR was a "protected activity" under the requisite framework because Plaintiff failed to demonstrate his subjective belief that Tift Regional was engaged in unlawful activity (racial discrimination) was *objectively* reasonable based on the facts and record available. (Doc. 55-1 at 9.) Defendant contends that the comment from Laub was merely offensive and did not rise to the level of harassment. (*Id.* at 10.)

"An employee engages in protected activity if he opposes an employment practice based on a good faith, reasonable belief that the practice violates Title VII or Section 1981." *Canty v. Fry's Elecs., Inc.*, No. 1:09–CV–3508–WSD, 2012 WL 1038611, at *5 (N.D. Ga. Mar.

11

27, 2012) (citation omitted) (citing *Bryant v. U.S. Steel Corp.*, 428 Fed. App'x 895, 898 (11th Cir. 2011) (per curiam) (unpublished)). Such opposition must be conveyed to the employer through a complaint or overt rejection of what the employee believes is an illegal, discriminatory practice. *Id.* Therefore, an employee does engage in a protected activity by voicing complaints of racial discrimination to his employer. *Shannon v. Bellsouth Telecomm., Inc.*, 292 F.3d 712, 715 n.2 (11th Cir. 2002); *Rollins v. Fla. Dep't of Law Enforcement*, 868 F.2d 397, 400 (11th Cir.1989) (per curiam) (holding that Title VII protects those who informally voice complaints to their employer or utilize an internal reporting procedure).

Plaintiff counters Defendant's argument by asserting that he reasonably believed that Laub's comment was discriminatory. (Doc. 67 at 6-7.) Plaintiff did, indeed, convey his opposition to Laub's comment to his employer through a verbal report to HR. (Doc. 55-2 at ¶ 31; Doc. 67-2 at ¶ 15.) Thus, there is sufficient evidence for the Court to find that Plaintiff was engaged in a protected activity and meets the first prong of the requisite framework for a claim of retaliation. *See Shannon v. Bellsouth Telecomm., Inc.*, 292 F.3d at 715 n.2; *Rollins v. Fla. Dep't of Law Enforcement*, 868 F.2d at 400.

Regardless of whether Plaintiff was engaged in a protected activity, Defendant Tift Regional contends that he cannot sustain a prima facie case for retaliation because there is no evidence of a causal connection between Plaintiff's termination and his report to HR. (Doc. 55-1 at 10.) Defendant points out that Plaintiff's claim essentially rests on temporal proximity between the two instances based on the fact that his termination came within days of his complaint to HR. (*Id.*) Defendant argues, however, that temporal proximity alone cannot sustain such a claim, and Plaintiff has not provided any support or evidence to back his claim that there is a connection between his complaint and his termination. (*Id.*) Defendant Tift further provides even if Plaintiff could demonstrate such a link, there are legitimate, nondiscriminatory reasons to support its decision to terminate Plaintiff and therefore Plaintiff's claim fails. (*Id.* at 10-11.)

"The causal link element is construed broadly so that 'a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated.' In general, a causal link can be established by showing that the decision maker knew of the

12

protected conduct and there was a close temporal relationship between the protected conduct and the adverse employment action." *Freeman v. Perdue Farms, Inc.*, 496 F. App'x 920, 926 (11th Cir. 2012) (citation omitted). "Conversely, the plaintiff need not show as close a temporal connection if he offers other evidence showing causation." *Id.* "The general rule is that close temporal proximity between the employee's protected conduct and the adverse employment action is sufficient circumstantial evidence to create a genuine issue of material fact of a causal connection," as long as there is some evidence that the decision-maker was aware of the protected activity. *Brungart v. BellSouth Telecomm., Inc.*, 231 F.3d 791, 799 (11th Cir. 2000).

Plaintiff's claim for retaliation is based on the allegation that Defendant Tift Regional terminated his employment in bad faith because he reported Laub's comment to HR. (Doc. 22 at 6-8.) In support of this argument, Plaintiff points to the record evidence establishing that Fullum created his termination documents "two days after [he] complained and after or on the same day" Thurston informed Fullum of his complaint. (Doc. 67 at 8.) The fact that Fullum was aware of Plaintiff's complaint to HR is enough to constitute circumstantial evidence supporting the argument there is a question of causal connection. *See Brungart v. BellSouth Telecomm., Inc.*, 231 F.3d at 799.

However, Plaintiff's prima facie case does not withstand scrutiny when compared to Defendant Tift Regional's nondiscriminatory reasons for his termination. Once a Plaintiff has developed a prima facie case for retaliation, the burden shifts to the Defendant to provide supported, nondiscriminatory reasons for a plaintiff's termination. Chapman v. A1 Transp., 229 F.3d 1012, 1024 (11th Cir. 2000) (en banc). Defendant Tift Regional shoulders this burden by pointing to testimony and evidence demonstrating to the Court that it maintained multiple nondiscriminatory reasons to terminate Plaintiff's employment, from failure to adhere to policies, to tardiness, to failure to cooperate, to lack of work ethic. (Doc. 55-2 at ¶¶ 22-25, 33, 36.)

Plaintiff Edwards does not provide the Court with any evidence (or much argument) to negate Defendant Tift Regional's presented nondiscriminatory reasons for his termination. He similarly fails to establish that his termination was pretextual in nature.

13

Where a defendant provides sufficient nondiscriminatory reasons rebutting a plaintiff's case for retaliation, the plaintiff can, through a preponderance of the evidence, challenge those nondiscriminatory reasons by offering proof that they were pretextual. *MacPherson v. University of Montevallo*, 922 F.2d 766, 774 (11th Cir. 1991). Pretext may be shown directly by demonstrating that a discriminatory purpose actually motivated the employer's actions or indirectly by demonstrating why the employer's presented nondiscriminatory reasons are not credible. *Young v. General Foods Corp.*, 840 F.2d 825, 828 (11th Cir. 1998); *Pace v. S. Ry. Sys.*, 701 F.2d 1383, 1391 (11th Cir. 1983). "[C]onclusory allegations of discrimination, without more, are not sufficient to raise an inference of pretext or intentional discrimination where [an employer] has offered ... extensive evidence of legitimate, non-discriminatory reasons for its actions." *Young v. General Foods Corp.*, 840 F.2d at 831 (quoting *Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 597 (11th Cir. 1987).

Plaintiff argues that Defendant's stated reasons for his termination were pretextual on the part of Defendant because it presented "ever-changing justifications" for his termination. (*Id.*) He argues timecards indicating that he was present on the days that Fullum cites in the termination documents show that Defendant kept changing its reasoning for his termination. (*Id.* at 13.) He claims, generally, that this is evidenced by the fact two documents were created. (*Id.*) Plaintiff also argues that pretext is further established on the grounds that Defendant Tift Regional "skipped all of the steps" of its own discipline policy in its efforts to terminate him following his complaint to HR. (*Id.* at 14.) Plaintiff further argues that pretext is established because similarly situated white employees were not subjected to termination as he was because Defendant had followed its disciplinary policy when such employees were accused of the same behaviors. (*Id.* at 15-16.)

Defendant Tift Regional counters Plaintiff's claim for pretext by again pointing out that Plaintiff provides no evidence to counter its nondiscriminatory reasons for terminating him. (Doc. 73 at 6-7.) Defendant points out that the documents Plaintiff contends are evidence that it was "shifting its reasons" for terminating him were unsigned and thus a draft created prior to his actual termination. (Doc. 73 at 7.) Defendant also points out that its policy regarding employees, including its one hundred twenty (120) day probationary period

negate Plaintiff's contentions. Unrebutted testimony on the record indicates that employees working within this stated probationary period, such as Plaintiff, may be terminated "without documentation or additional notice" where job performance is deficient. (Doc. 55-2 at ¶ 17.) Importantly, Defendant asserts that the similarly situated employees Plaintiff mentions in his Response were not, in fact similarly situated to plaintiff in that the instances referred to were concerning employees who had worked past their probationary period. (Doc. 73 at 8.) This assertion is also unrebutted by Plaintiff. *See Lewis v. City of Union City, Georgia*, 918 F.3d 1213, 1227-28 (11th Cir. 2019) (holding that a comparator is considered "similarly situated" where the comparator is subjected to the same employment policies, engaged in the same conduct, worked at the same level of supervision, and shared a similar employment disciplinary history.)

After reviewing the available record, evidence, and arguments, the Court finds that Plaintiff failed to provide legally cognizable evidence that Defendant's stated reasons for his termination were pretextual. *See MacPherson v. University of Montevallo*, 922 F.2d at 774. Plaintiff simply did not provide the Court with evidence demonstrating direct discriminatory intent on the part of Defendant or indirect support demonstrating why the given nondiscriminatory reasons are not credible. *Young v. General Foods Corp.*, 840 F.2d at 828. The record demonstrates that Defendant's nondiscriminatory reasons for Plaintiff's termination are supported by evidence. Moreover, Plaintiff's claim of pretext in his Response is wholly unsupported when reviewed in light of the evidence showing Defendant maintained a clearly conveyed one hundred twenty (120) day probationary period in which an employee may be terminated without notice or documentation. (57-2 at ¶ 17.) In other words, Plaintiff has not shown by evidence that Defendant Tift Regional failed to comply with the steps applicable to Plaintiff's status as its employee or similarly situated non-protected employees. Ultimately, the Court concludes, based on precedent, argument, and the record, that Plaintiff failed to rebut Defendant Tift Regional's proffered, supported nondiscriminatory reasons that his termination was not a result of his protected activity. *See Young v. General Foods Corp.*, 840 F.2d at 828; *MacPherson v. University of Montevallo*, 922 F.2d at 774.

Based on the available facts, record evidence, and analysis above, the Court finds that summary judgment in favor of Defendant Tift Regional is appropriate for these claims. Plaintiff's claims for retaliation do not overcome Defendant's clearly stated and supported nondiscriminatory reasons for his termination.[*] Accordingly, the Court finds that there is no genuine issue of material fact on this issue. *See Celotex*, 477 U.S. at 322-23; *Allen*, 121 F.3d at 646.

## CONCLUSION

Based on the above analysis, the Court finds that Plaintiff has failed to establish any genuine issue of material fact to be tried based on his Amended Complaint for discrimination and retaliation under Title VII and section 1981. Accordingly, Defendant Tift Regional's Motion for Summary Judgment (Doc. 55) is **GRANTED.**

**SO ORDERED,** this 29th day of March 2022.

/s/ W. Louis Sands
**W. LOUIS SANDS, SR. JUDGE**
**UNITED STATES DISTRICT COURT**

---

[*] In his Response to Defendant's Motion, Plaintiff raises a new claim for Hostile Environment. Plaintiff did not raise this claim in his Amended Complaint. Because Plaintiff is raising this new claim upon first instance in his response to a summary judgment motion, the Court exercises its discretion and declines to consider it.